NO. 23-3612

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

MARCIA DENMON,
Plaintiff-Appellee,

v.

KANSAS COUNSELORS, INC.,
Defendant-Appellant.

On Appeal from Orders of the United States District Court
for the Western District of Missouri

REPLY BRIEF OF APPELLANT

Joshua C. Dickinson
Shilee T. Mullin
SPENCER FANE LLP
13815 FNB Parkway, Suite 200
Omaha, NE 68154
Telephone: (402) 965-8600
Facsimile: (402) 965-8601
E-mail: jdickinson@spencerfane.com
          smullin@spencerfane.com

ATTORNEYS FOR APPELLANT

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ..................................................................................................1

REPLY TO DENMON'S STATEMENT OF THE CASE .......................................2

ARGUMENT .......................................................................................................3

    I.    The Letter Did Not Intrude Into Denmon's Privacy Or
    Seclusion .............................................................................................4

    II.   The Letter Would Not Be "Highly Offensive"—Or Even
    "Offensive"—To A Reasonable Person...............................................10

    III.  There Is No Evidence That The Letter Was "Highly
    Offensive"—Or Even "Offensive"—To Denmon .............................12

    IV.  Nothing In The Record Supports That Denmon Experienced
    Emotional Distress ............................................................................14

CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barber & Sons Co. v. Nachtigal Farms, Inc.*,
No. 16-0404, 2017 WL 7725247 (W.D. Mo. Nov. 8, 2017) ..............................15

*Bassett v. Credit Bureau Services, Inc.*,
60 F.4th 1132 (8th Cir. 2023) ...................................................................7

*Braitberg v. Charter Communications, Inc.*,
836 F.3d 925 (8th Cir. 2016) .....................................................................6

*Branham v. TrueAccord Corp.*,
No. 22-00531, 2023 WL 2664010 (N.D. Ill. Mar. 28, 2023) ...........................11

*Demarais v. Gurstel Chargo, P.A.*,
869 F.3d 685 (8th Cir. 2017) .....................................................................6

*Ebaugh v. Medicredit, Inc.*,
No. 23-209, 2023 WL 5289226 (E.D. Mo. Aug. 17, 2023) ....................3, 5, 7, 8

*Freeman v. Ocwen Loan Servicing, LLC*,
No. 23-2512, 2024 WL 3381718 (7th Cir. July 12, 2024) ................................13

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*,
982 F.3d 1069 (7th Cir. 2020) ...................................................................5

*Hatchett v. Fin. Bus. & Consumer Sols., Inc.*,
No. 21-622, 2022 WL 377002 (M.D.N.C. Feb. 8, 2022) ..................................13

*Le v. Medtronic, Inc.*,
No. 21-1933, 2022 WL 1423308 (D. Minn. May 5, 2022) ...............................12

*Lezark v. I.C. System, Inc.*,
No. 20-403, 2023 WL 4571457 (W.D. Pa. July 18, 2023).............................8, 9

*Pucillo v. Nat'l Credit Sys., Inc.*,
66 F.4th 634 (7th Cir. 2023) .............................................................11, 12

*Salcedo v. Hanna*,
936 F.3d 1162 (11th Cir. 2019) ................................................................12

*Six v. IQ Data Int'l Inc.*,
   673 F. Supp. 3d 1040 (D. Ariz. 2023) ...................................................7

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016), *as revised* (May 24, 2016) ...........................2, 12

*St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*,
   898 F.3d 351 (3rd Cir. 2018) ...................................................9

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)..............................................................1, 10, 12

*Vazzano v. Receivable Mgmt. Servs., LLC*,
   621 F. Supp. 3d 700 (N.D. Tex. 2022) ...........................................8, 9

**Statutes**

Fair Debt Collection Practices Act,. 15 U.S.C. § 1692c ......................................1, 7

**Other Authorities**

Restatement (Second) of Torts § 652B (1977) .............................................2, 4, 6, 7

**INTRODUCTION**

Appellee Marcia Denmon ("Denmon") received one letter—a letter that was not threatening or abusive—in the U.S. mail. Denmon makes the argument that the letter injured her because it "intruded upon her seclusion/invaded her privacy" in that it was sent after she asked that Appellant Kansas Counselors, Inc. ("KCI") not contact her pursuant to Section 1692c(c) of the Fair Debt Collection Practices Act[1] ("FDCPA"). She advances nothing more in support of standing. Thus, Denmon's argument, taken to its logical conclusion, is that *anytime* a debt collector sends a letter in violation of Section 1692c(c) it intrudes upon the debtor's seclusion, and *always* causes an injury, and, thus, Article III standing is *always* established. The law is not so simplistic.

Denmon's argument (and the District Court's Order on appeal) ignores the Supreme Court's instruction in *TransUnion v. Ramirez*[2] that intangible harms may qualify as concrete injuries only under the narrow circumstances where the intangible harm bears a "*close relationship* to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425 (emphasis added). To determine if the harm alleged bears a "close relationship," courts must carefully scrutinize the common-law analogue. The common-law analogue here requires:

---

[1] 15 U.S.C. § 1692c(c).
[2] *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

**"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."** Restatement (Second) of Torts § 652B (1977). Placing an unwanted letter in a mailbox simply does not bear a close relationship to the same kind of odious behavior recognized at common law, which requires an unwanted intrusion into a plaintiff's peace and quiet that is highly offensive.

At bottom, this case presents the quintessential "bare procedural violation, divorced from any concrete harm," which the United States Supreme Court has determined does not "satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016).

## REPLY TO DENMON'S STATEMENT OF THE CASE

Denmon asserts in her Brief that receipt of the letter at issue upset, distressed, and alarmed her. (Appellee Br. at 13, 7.) To support those "facts," she cites only to her Amended Complaint. (*Id.* (citing R.Doc. 13-1 at p. 3, ¶¶ 9-10; App. 006).). As set forth below, Denmon's citation to her Amended Complaint was insufficient on summary judgment, and these alleged injuries are *not* "facts" that Denmon presented in her "Statement of Material Facts Not in Dispute" in the lower court. (App. 24-25, R.Doc. 21 at 2-3.) As KCI pointed out in its summary judgment briefing, Denmon did not argue emotional distress as a basis for standing. (App. 80, R.Doc.

30 at 2.) She cannot do so now for the first time. Moreover, there is no other evidence in the record to support that fact. (*See generally*, App. 24-40, R.Docs. 21, 21-1, 21-2, and 21-3; App. 64-78, R.Doc. 26; App. 89-97, R.Doc. 31.)

## ARGUMENT

Denmon trumpets that "KCI's continued collection actions resulted in a direct invasion of Ms. Denmon's legally protected right to privacy and intruded upon her seclusion, which upset, distressed and alarmed Ms. Denmon." (Appellee Br. at 7.) There are several problems with this argument and the District Court's endorsement of the argument.

First, "invasion of privacy is not a tort under Missouri law." *Ebaugh v. Medicredit, Inc.*, No. 23-209, 2023 WL 5289226, at *2 (E.D. Mo. Aug. 17, 2023). Thus, there is no legally protected right to privacy under Missouri common law. Denmon does not present authority stating otherwise. Thus, this argument cannot possibly support Denmon's assertion that the District Court correctly found she had suffered an injury-in-fact.

Missouri does, however, recognize the tort of "intrusion upon seclusion." But the District Court failed to analyze whether Denmon's alleged harm bore a "close relationship" to that tort, and Denmon continues to sidestep the tort's substantive elements. This decision to gloss over the requirement of the tort of intrusion upon

seclusion was seemingly purposeful, given that the facts of her case are a far cry from this tort.

The Restatement (Second) of Torts identifies the tort as:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977). Thus, for there to be a "close relationship," unquestionably, there must first be a physical or other intrusion of one's "solitude or seclusion" for the tort to apply. There is no such intrusion.

Even if receipt of a letter in one's mailbox could constitute an "intrusion," it is certainly not "highly offensive," or even mildly offensive to a reasonable person. And, here, there is no evidence in the record that Denmon was "highly" or even mildly offended, nor suffered any other negative consequences from the letter.

For all of these reasons, as set forth below, the District Court's conclusion that Denmon established Article III standing is contrary to law and should be reversed.

## I. The Letter Did Not Intrude Into Denmon's Privacy Or Seclusion

Denmon does not dispute that unsolicited mailings do not constitute actionable intrusion. (*Compare* Appellant Br. at 17-18, *with* Appellee Br. at 13-27.) Rather, Denmon asserts that Congress elevated all claims under the FDCPA, not just claims for "abusive collective practices." (Appellee Br. at 16.) However, Denmon provides no additional rationale for why or how receipt of the one unwanted letter

through the U.S. Mail intruded upon her solitude or seclusion, which is required for an intrusion upon seclusion claim.

The District Court did briefly address the issue, holding that "[i]t is counterintuitive to treat an oral communication as inherently more invasive than a written message like that here. In defamation and contracting, writings are treated as having more impact than oral posturing." (R.Doc. 51, App. 1401, Add. 17.) The District Court's conclusion is inapposite because this case does not concern defamation or contracting—both of which are legal claims wherein the *content* of the communication is paramount, not the mode.

Juxtapose that with the asserted common-law analogue here, intrusion upon seclusion, wherein the mode of intrusion is highly relevant. Indeed, courts have recognized a clear difference between telephone and mail communications. *E.g.*, *Ebaugh v. Medicredit, Inc.*, No. 23-209, 2023 WL 5289226, *2 (E.D. Mo. Aug. 17, 2023) (citing cases); *see Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020) (discussing distinction between text messages and phone calls and letters). And, by determining that Denmon had Article III standing, the District Court effectively (and erroneously) determined that receipt of a letter in one's mailbox via U.S. Mail is in fact a physical or other intrusion of one's "solitude or seclusion." The District Court's determination, however, strips "close" from "relationship" in contravention of Supreme Court precedent.

Indeed, a physical or other intrusion of one's "solitude or seclusion" is a necessary component of the tort of intrusion upon seclusion. The essence of such a claim simply does not exist without such an intrusion.[3] The passive placement of a letter in one's mailbox (by the U.S. Postal Service)—which the recipient could choose to never open—is simply not analogous to the numerous examples of actionable intrusions contained in the Restatement (Second) of Torts, such as:

- "[W]hen the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home," Restatement (Second) of Torts § 652B cmt. b (1977); and

- "A, a private detective seeking evidence for use in a lawsuit, rents a room in a house adjoining B's residence, and for two weeks looks into the windows of B's upstairs bedroom through a telescope taking intimate pictures with a telescopic lens," *id.* at illustration 2.

Denmon downplays the elements of the tort of intrusion upon seclusion and asserts that she is not required to plead and prove the elements of the tort. (Appellee Br. at 11.) KCI does not assert that Denmon must establish an exact duplicate in American history and tradition, but she must at least establish the core components of the common-law analogue.

---

[3] KCI is not asserting that the Court should adopt the "kind" versus "degree" analysis, and notes that this Court in *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016), and *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017), declined to address whether the analogy between an intangible harm and a related traditional harm should be measured "in kind" or in "degree." The facts of this case are so plainly short of a "close" common-law analogue that it remains unnecessary for this Court to take a position on this disputed legal framework.

This Court's decision in *Bassett v. Credit Bureau Services, Inc.*, 60 F.4th 1132 (8th Cir. 2023) fully supports that assertion. As set forth in KCI's opening brief, this Court considered the common-law analogues asserted in that case, which were fraudulent misrepresentation and conversion. *Id.* at 1137. The Court determined that the plaintiff did not show any harm that bears a close relationship to those analogues because the record was devoid of the core components of those torts— specifically the element of reasonable reliance. *Id.* at 1137. So too here must Denmon demonstrate the core components of intrusion upon seclusion, i.e., first, an intrusion upon the solitude or seclusion of another. Restatement (Second) of Torts § 652B (1977).

In fact, KCI discussed numerous cases where courts determined that mere receipt of an unsolicited letter is not similar to the kind of harm arising from intrusion upon seclusion. (Appellant's Br. at 16-22.) In *Six v. IQ Data Int'l Inc.*, 673 F. Supp. 3d 1040 (D. Ariz. 2023), which Denmon did not address, the court reiterated that, "[i]ntrusion upon seclusion requires more than just an emotional response—it requires a particular kind of offensive intrusion." *Id.* at 1045. Moreover, the court in *Ebaugh v. Medicredit, Inc.*, No. 23-209, 2023 WL 5289226, at *3 (E.D. Mo. Aug. 17, 2023), citing *TransUnion* and numerous Courts of Appeals, rejected the allegation that mere receipt of a letter in violation of Section 1692c is a harm that bears a "close relationship" to the tort of intrusion upon seclusion, holding:

In conclusion, Plaintiff's bare allegations of injury that stem from receipt of one letter sent in violation of the FDCPA is insufficient to establish standing. Without a concrete injury in-fact, the Court would be authorizing any plaintiff to sue a defendant for compliance with regulatory law, instead of seeking to remedy harm to his or herself. *Bassett*, 60 F.4th at 1137 ("An uninjured plaintiff who sues ... is ... not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's compliance with regulatory law" (quoting *TransUnion*, 141 S. Ct. at 2206)). Such a result is disharmonious with Article III standing and to the Constitution's separation of powers. *TransUnion*, 141 S. Ct. at 2206-07. Because Plaintiff's allegations do not show she suffered a concrete injury in-fact as a result of the alleged statutory violations, she lacks Article III standing.

*Id.* at *4.

In her Brief, Denmon only cites to two cases that held that mailing *a letter*—as opposed to placing a telephone call or text message—could be sufficiently analogous to the tort of intrusion upon seclusion. The first, *Vazzano v. Receivable Mgmt. Servs., LLC*, 621 F. Supp. 3d 700 (N.D. Tex. 2022), is based on a flawed analysis. The second, *Lezark v. I.C. System, Inc.*, No. 20-403, 2023 WL 4571457 (W.D. Pa. July 18, 2023), is distinguishable.

In *Vazzano*, the court determined that the plaintiff's evidence that she felt harassed by an unwanted letter "is similar to an intrusion upon seclusion harm recognized at common law and is therefore sufficient to confer standing." *Vazzano*, 621 F. Supp. 3d at 709. The court determined that the plaintiff's theory had merit because "[c]ourts have held that receiving an unwanted letter or unwanted phone call has a 'close relationship' to the harm posted by an intrusive invasion of privacy,"

citing to numerous cases. *Id.* However, a letter was at issue in only <u>one</u> of those cited cases, *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc*., 898 F.3d 351, 355 (3rd Cir. 2018).

In *St. Pierre*, the collection agency sent a letter where the plaintiff's account number was visible through the envelope. *Id.* The court reiterated that "the exposure of a plaintiff's account number through a glassine window implicates a core concern animating the FDCPA—the invasion of privacy—and thus is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts." *Id*. (cleaned up). *St. Pierre* is nothing like the case at bar, where Denmon alleged that receipt of the letter itself in her mailbox intruded upon her seclusion.

The other case that Denmon cited, *Lezark*, concerned a letter that advised the plaintiff that if he failed to contact defendant to discuss payment, "our client has authorized us to pursue additional remedies to recover the balance due, including referring the account to an attorney." *Lezark*, 2023 WL 4571457, *1. The plaintiff sought leave to amend his complaint to allege that the letter caused him to believe that a lawsuit may be filed against him, which caused him to feel overwhelmed and to contact an attorney for help. *Id.* *2. The letter at issue in this case did not threaten a lawsuit. (App. 13, R.Doc. 13-1.)

Thus, the weight of authority demonstrates that KCI's letter to Denmon does not bear the requisite "close relationship" to the common-law analogue because Denmon has not shown an intrusion upon her solitude. For this reason alone, KCI asks this Court to determine that the District Court erred by concluding that Denmon established standing.

## II. The Letter Would Not Be "Highly Offensive"—Or Even "Offensive"— To A Reasonable Person

Even if the Court finds an intrusion, a second core element of intrusion upon seclusion is lacking—highly offensive conduct by KCI. As to whether the receipt of the one unwanted letter in the mail is "highly offensive to a reasonable person," Denmon does not even try to advance that it is. Rather, Denmon seemingly asserts that she does not need to show this element of the common-law analogue to prove her claim to be "closely related." Such position again strips the *TransUnion* analysis of the word "close." The Supreme Court should be assumed to have purposely chosen to modify the noun "relationship" with the adjective "close." The Court could have omitted the adjective "close" and then presumably any relationship at all would suffice. Or, the Court could have selected a lesser modifier such as "a," "any," "some," "the slightest," an "iota of," etc. The Court chose otherwise. It required a "*close* relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 440 (emphasis added).

No claim can be close to intrusion upon seclusion without some level of offensiveness. It is central to the claim. Without offense, the alleged intrusion is no more than the stray honk of a car horn while trying to watch "Game of Thrones," which is an accepted price of living in society.

In fact, in considering whether an alleged injury is actionable under intrusion upon seclusion, the court in *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 638 (7th Cir. 2023) held that "[i]ntrusion upon seclusion requires more than just an emotional response—it requires a particular kind of offensive intrusion." *Pucillo*, 66 F.4th at 640. The kind of offensive intrusion, the court in *Pucillo* held, must be something more than "confusion and fear upon receipt of the letters," because "there is nothing inherently bothersome, intrusive, or invasive about a collection letter delivered via U.S. Mail." *Id.*

Moreover, this Court can take judicial notice that people receive unwanted mail on a near daily basis. It is deposited by the U.S. Postal Service in mailboxes. Then, the recipients review the mail (or not) as they deem fit and on their timetable. Receipt of unwanted mail in one's postal box is simply not offensive. *Cf. Branham v. TrueAccord Corp.*, No. 22-00531, 2023 WL 2664010, at *6 (N.D. Ill. Mar. 28, 2023) (holding that receipt of two emails is not "highly offensive" to a reasonable person). Thus, the District Court erred by determining that Demon suffered an injury

bearing a close relationship to the tort of intrusion upon seclusion because Denmon is missing the core component of this common-law analogue—offensiveness.

## III. There Is No Evidence That The Letter Was "Highly Offensive"—Or Even "Offensive"—To Denmon

Section II above outlines the objective criterion necessary to support a common-law analogue for intrusion upon seclusion—specifically, an act that is highly offensive to a reasonable person. However, the United States Supreme Court also engrafted upon its standing requirement a subjective element as well. As the Court in *TransUnion* succinctly put it, a litigant seeking standing in federal court must be able to answer the fundamental question, "What's it to you?" *TransUnion*, 594 U.S. at 423. In other words, here, Denmon must demonstrate that the one letter at issue in this lawsuit affected her personally. *Spokeo*, 578 U.S. at 339 (holding that for an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."); *Pucillo*, 66 F.4th at 638 (holding that *TransUnion* "limits the intangible harms that can be considered concrete," and that concrete means "real" and "not abstract.").

The harm sought to be redressed by the tort of intrusion upon seclusion is a substantial, highly offensive interference with a plaintiff's seclusion. *Salcedo v. Hanna*, 936 F.3d 1162, 1171 (11th Cir. 2019) (quoting Restatement (Second) of Torts § 652B). A "naked assertion" of intangible harm that is "devoid of further factual enhancement, falls short of plausibly establishing injury." *Le v. Medtronic*,

*Inc.*, No. 21-1933, 2022 WL 1423308, at *2 (D. Minn. May 5, 2022) (cleaned up). Thus, to establish standing based on an intangible injury closely related to intrusion upon seclusion, Denmon must come forward with *evidence* supporting intrusion upon seclusion that injured *her*. *Freeman v. Ocwen Loan Servicing, LLC*, No. 23-2512, 2024 WL 3381718 (7th Cir. July 12, 2024).

Indeed, in *Freeman*, the Seventh Circuit recently determined that the plaintiff did not have standing to pursue an FDCPA claim that she asserted caused an intangible injury closely related to intrusion upon seclusion because she brought forward no admissible evidence supporting intrusion upon seclusion as an analogue for the fear she allegedly suffered. *Id.* *5. Furthermore, the court in *Freeman* reiterated that annoyance, fear, or stress without any physical manifestations and no qualified medical diagnosis, even in the context of the asserted intangible injury associated with intrusion upon seclusion, is insufficient to confer standing. *Id.*; *see also*, *Hatchett v. Fin. Bus. & Consumer Sols., Inc.*, No. 21-622, 2022 WL 377002, at *4 (M.D.N.C. Feb. 8, 2022) (holding that whether the violation of the FDCPA could cause intangible harm closely related to the harm caused by invasion of privacy torts is not a generic one and the plaintiff must come forward with more than bare allegations of harm) (citing *TransUnion*, 141 S.Ct. at 2208-10).

Here, Denmon has not argued, let alone introduced evidence before the District Court, that she was in any way offended by the letter at issue. So, she utterly

fails to meet the subjective criterion established by the Supreme Court that she was personally aggrieved by KCI's conduct. For this additional reason, the District Court's determination that Denmon established Article III standing was contrary to law.

## IV.    Nothing In The Record Supports That Denmon Experienced Emotional Distress

Finally, Denmon—clearly understanding that no reasonable person would find the letter highly offensive, and having not asserted any subjective offense herself—seeks to fill this gaping hole in her standing argument by asserting amorphous emotional distress allegedly caused by the letter. This Court need not weigh the believability of this dubious assertion because there is nothing in the record to support the position. Indeed, Denmon argues that she experienced emotional distress because the letter "upset, distressed and alarmed [her]." (Appellee Br. at 10, 14.) In doing so, Denmon cites only to her Amended Complaint. (*Id.*)

Solely citing to her Amended Complaint was and is insufficient to survive the motion for summary judgment because:

> [A] plaintiff cannot oppose summary judgment by relying on his complaint; instead, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).

*Barber & Sons Co. v. Nachtigal Farms, Inc.*, No. 16-0404, 2017 WL 7725247, at *3 (W.D. Mo. Nov. 8, 2017).

Nor was there any other evidence of emotional distress before the District Court. In conjunction with the parties' summary judgment motions, Denmon offered no evidence of any injury whatsoever. (*See* App. 24-40, R.Docs. 21, 21-1, 21-2 and 21-3; App. 64-78, R.Doc. 26; App. 89-97, R.Doc. 31.) The District Court, in granting Denmon's Motion for Summary Judgment, erroneously, stated that the letter caused Denmon to "question whether she could refuse to pay the debt, and 'distress[] and alarm[].'" (App. 101, R.Doc. 32 at 4; Add. 4.) That conclusion was simply not supported by any admissible evidence. (*Id.*) The materials that the District Court cited were Denmon's Amended Complaint (App. 6; R.Doc. 13-1 at 3) (which is not evidence), the parties' Stipulated Statement of Facts (App. 52-54; R.Doc. 22-1) (which contains <u>no</u> reference to alleged emotional distress), and Denmon's Supporting Suggestions for Summary Judgment (App. 26; R.Doc. 21 at 4) (which, again, is not evidence, and which cited only to her Amended Complaint). (App. 101, R.Doc. 32 at 4, Add. 4 (citing "Doc. 13-1 ¶¶ 9-10; see Doc. 22-1 and Doc. 21 at 4.").)

Thus, because Denmon brought forward no evidence that she suffered any emotional distress whatsoever, she cannot now argue that the letter "upset" her. The

District Court's conclusion that the letter distressed and alarmed Denmon has no basis in the record and was clearly erroneous.

## CONCLUSION

For the reasons set forth above, KCI respectfully requests that the District Court's November 1, 2023, Order be reversed and that this Court order the District Court to reconsider its March 10, 2023, Order, grant KCI's Motion for Summary Judgment, and dismiss Denmon's case for lack of standing.

Respectfully submitted,

By: s/ Joshua C. Dickinson
    Joshua C. Dickinson
    Shilee T. Mullin
    Attorneys for Appellant
    Spencer Fane LLP
    13815 FNB Parkway, Suite 200
    Omaha, NE 68154
    Telephone: (402) 965-8600
    Facsimile: (402) 965-8601
    E-mail: jdickinson@spencerfane.com
           smullin@spencerfane.com

    Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that:

1.     This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because this brief contains 3,764 words, excluding the parts of the brief exempted by FRAP 32(f).

2.     This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in size 14 font, Times New Roman type style.

3.     This brief complies with 8th Cir. R. 28A(h) because it has been scanned for viruses, is virus-free, and is filed in searchable, Portable Document Format.

4.     On this 22nd day of July, 2024, this brief was filed electronically with the Clerk of the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

s/ Joshua C. Dickinson
Attorney for Appellant
July 22, 2024
